Joshua B. Tobey & others *vs.* President, Directors, &c. of Wareham Bank.

Before there was any parochial organization in the town of Wareham, and while parochial business was transacted by the inhabitants of the town, in town meetings, the *St.* of 1825, *c.* 121, authorized the town to make sale of certain lands "originally appropriated for the support of the regular administration of gospel ordinances therein, and to be exclusively devoted to that purpose;" and directed that at the annual town meetings thereafter held in March or April, three or more persons should be elected trustees of the fund to be raised by such sale, who should invest the proceeds of the sale in some productive fund, and 'annually appropriate the income thereof, according to the original intention of said town when the lands aforesaid were laid out and appropriated:" In 1826 said lands were sold, and in 1827 and 1828, the town elected trustees, who invested the proceeds of the sale, as required by said statute : In February 1828, the first parish in Wareham was organized, and several other parishes were afterwards organized in Wareham: In 1828 and ever afterwards, said first parish annually elected trustees of said fund, to whom it was transferred, and who invested it, in the name of the "Trustees of the Ministerial Fund in Wareham," in shares in the capital stock of Wareham Bank, and appropriated the income to the use of said parish : No trustees were elected by the town, after 1828, until 1844 : In 1844 and the two following years, trustees were again elected by the town, and in 1846

Tobey & others v. Wareham Bank.

the town voted to request said trustees to collect the interest on the ministeria. fund and divide it among the several religious societies in the town, in proportion to their population ; and said trustees brought an action against the Wareham Bank to recover the dividends declared on the aforesaid shares standing in the name of the "Trustees of the Ministerial Fund." *Held*, that the lands were holden by the town in its parochial capacity, and that the proceeds of the sale thereof were holden in the same capacity, until the separate organization of the first parish ; that upon such organization of the first parish, the fund, in which those proceeds were invested, became the property of said parish, and were subject to its control; that the *St.* of 1825, *c.* 121, was not intended to change, and did not change, the legal character of the fund, and vest it in the town in contradistinction to the first parish ; that the direction to the town to elect trustees was applicable to the town only while it acted in its parochial capacity ; and that the parish, when separately organized, had the sole authority to elect trustees to manage the fund ; and that the action could not be maintained.

The omission of a parish, for one year, to elect parish officers, does not necessarily operate as a dissolution of the parish ; and if it did, the parish property would not therefore vest in the town, although the town held the property, in its parochial capacity, before the parish was separately organized.

When different persons claim the dividends on bank stock, the ownership of which is in dispute, and the directors of the bank promise one of the persons to pay him interest on the dividends, upon their being left in the bank, and he afterwards brings an action against the bank for the dividends, and fails to recover them, because the stock was proved to be the property of another person, he cannot recover the interest that was promised to him ; such promise being without consideration.

ASSUMPSIT, to recover four dividends declared by the defendants on thirty five shares of their capital stock, standing in the name of the "Trustees of the Ministerial Fund in Wareham."

At the trial before *Hubbard*, J. the plaintiffs showed, by the records of the town of Wareham, that, at the annual town meeting in March 1844, Joshua B. Tobey, Peter Mackie, Jedediah Briggs, John Galt and Osier Howard were chosen trustees of the ministerial fund ; and that they were again chosen at the annual town meeting in March 1845. The plaintiffs also read, from said records, a vote of the town, instructing these trustees to collect the interest due on said fund, and appropriate it to pay expenses, and invest the balance in good notes : Also a vote authorizing the trustees to apply to the legislature for a statute confirming an equitable distribution of the income, arising from said funds, among the different religious societies in said town : (It was ad‹ mitted that no such statute had been passed.) Also a vote

passed January 24th 1846, authorizing the trustees to collect the dividends due upon said fund from the Wareham Bank, and to bring a suit for the same, if the bank should refuse to pay :   Also a vote authorizing the town treasurer to hire the sum of $420 for paying expenses in collecting said dividends : Also a vote of the town, passed April 25th 1846, that the town trustees collect the interest due on the ministerial fund, and divide it among the several religious societies in the town, in proportion to their population.

The plaintiffs gave in evidence certificates of thirty five shares of the stock of Wareham Bank, dated November 10th 1835, signed by the president and cashier, to " the trustees of the ministerial fund in Wareham." The cashier of the bank testified that the stock was transferred, by William Fearing, Sylvanus Bourne and Peter Smith, to the then trustees of the fund, and that he delivered the certificates to said Bourne, and that all the dividends on said stock, previously to April 1844, had been paid to said Bourne, who gave his receipt for the same, as chairman of the trustees ; and it appeared that said Bourne, as treasurer of the first parish in Wareham, credited these dividends in the parish books, and paid them to the minister of the parish.

The plaintiffs relied on *St.* 1825, *c.* 121, authorizing the town of Wareham " to make sale of certain lots of woodland and meadow in said town, originally appropriated for the support of the regular administration of gospel ordinances therein, and to be exclusively devoted to that purpose," and also directing the town thereafter to elect annually, in March or April, three or more persons, to be " trustees of the fund to be raised by the sale aforesaid," and to invest the proceeds of said sale, and " annually appropriate the income thereof, according to the original intention of said town, when the lands and meadows aforesaid were laid out and appropriated ; " and that the trustees should " give bond to said town, for the faithful performance of their duties." The plaintiffs also claimed interest on a portion of the dividends sued for, by virtue of a paper, dated June 9th 1845, purporting to be a

**vote** of the directors of the bank. And a former cashier of the bank, called as a witness by the plaintiffs, testified that said vote was passed at a meeting of the directors, when a majority were not present ; that he did not record it, but that he gave the original paper to the trustees, promising to allow them interest. This testimony and the introduction of the paper were objected to by the defendants, but the objection was overruled.

The defendants gave evidence that certain lands and meadows in the town of Wareham, originally laid out to the use of the ministry, had been, until they were sold in 1826, under the aforesaid *St.* of 1825, *c.* 121, called, known and occupied as ministerial property, and that the use of them had been appropriated to the support of the congregational minister of said town ; that there was only one religious society, to wit, the congregational, in the town, until 1828, and that the town acted under one warrant, in town meetings, in its municipal and parochial capacities, until 1828 ; that in 1826, upon the petition of the town for authority to sell said lands and meadows; calling them parish property, the legislature passed the aforesaid *St.* of 1825, *c.* 121; that in the autumn of 1826, the said lands and meadows were sold , and that the town, in 1827 and 1828, elected trustees, as required by said statute.

The defendants then introduced the proceedings in the organization of the first parish in Wareham, in February 1828. And it appeared by the records of said parish, that the parish had chosen trustees of the ministerial fund, in February 1828, and annually afterwards, in March or April ; and that, in 1829, Bartlett Murdock, Benjamin Fearing, William Fearing, Isaac Pratt and Eliphalet Bumpus were chosen such trustees : That the parish, on the 5th of October 1829, voted to authorize the treasurer of the town to cancel the bond given, as required by the aforesaid statute, by the trustees; that the securities should be delivered into the hands of the trustees of the parish ; and that said trustees should give bond to the treasurer of the parish.

The following receipt, found among the papers of the present town treasurer, was then given in evidence : "Wareham, June 14th 1830. Received of Peter F. Briggs, treasurer of Wareham, $3611·11, it being the whole amount of the property belonging to the town of Wareham, called the ministerial fund, principal and interest, to 4th December 1829.

<div align="center">

William Fearing,   &#125; Trustees of

Eliphalet Bumpus, &#125; said fund."

</div>

The defendants then gave evidence that the interest of said fund was appropriated to the use of the first parish, by the trustees, who paid it to the parish treasurer ; that Sylvanus Bourne was first chosen, by the parish, one of the trustees of the fund, in 1831, and annually afterwards till 1844, and acted in said capacity ; that he was treasurer of the parish during most of that time ; that he, in 1835, with the consent of the other trustees, invested the funds in thirty five shares in the stock of Wareham Bank, and that the aforesaid cer· tifi<a>ate of said stock was then issued and delivered to said Bourne, who held it as trustee, or treasurer of said parish, till 1844, when he delivered it to Joshua B. Tobey, after said Tobey had been chosen one of the trustees of the town : That said Bourne, from the time of the purchase of said stock, received all the dividends declared thereon, and signed the dividend book, as " chairman of trustees," or " chairman," and, in one instance, in his own name alone ; and that he, as treasurer of the parish, appropriated the dividends, so received, to the minister of the parish — a small part being applied to parish purposes : That said Bourne was not chosen trustee by the town, and that the town, after 1828, chose no trustees, until 1844, in which year the parish also chose trustees, at their meeting on the 29th of April.

It did not appear in evidence, that from the passing of said *St.* of 1825, *c.* 121, (on the 3d of March 1826,) till the year 1845, the trustees chosen by the parish ever executed any bond, either to the town or to the parish, for the faithful dis· charge of their duties.

It appeared that in 1844 a written application, signed by

twelve persons, was made to a justice of the peace to organize the first parish in Wareham; that said justice issued his warrant, dated March 1st 1844, calling a meeting of the parish on the 9th of said month ; that a meeting was held, on that day, at which no trustees were chosen ; and that this meeting was dissolved, after a vote had been passed designating the manner in which future meetings should be called. The plaintiffs objected, that this was an organization of a new parish, and not of the first parish, and that all subsequent proceedings were the proceedings of such new parish. They also objected, "that there was not now any congregationa. parish in Wareham, except as involved in the town, which has the power to act parochially ; the first organization of the parish having become extinct." These objections were overruled.

The defendants gave in evidence a vote of the parish, passed on the 29th of April 1845, authorizing the trustees, chosen by the parish, " to demand and receive all the papers and evidence of property belonging to said parish, and to demand and recover the interest on dividends which have accrued on said funds, and to take all legal measures necessary in the premises, and also defend the same." The defendants also showed, that on the 5th of January 1846, they paid $420 — the full amount of dividends then due — to said trustees chosen by the parish, and took from said trustees a bond of indemnity ; and that said sum had been applied, by said trustees, to parish purposes.

It was admitted that there were several organized parishes in Wareham, and that the officers of each of them had demanded, from the trustees chosen by the town, their portion of the income of the ministerial fund.

A nonsuit was entered, subject to the opinion of the whole court. If any of the judge's rulings were wrong, in any material point, the nonsuit to be taken off, and a new trial had, or the defendants to be defaulted, as the court shall determine.

*Coffin*, for the plaintiffs.

*Beal & S. Miller*, for the defendants.

DEWEY, J. The great question in the present case is that which arises upon the construction of the *St.* of 1825, *c.* 121. The bank shares, which are the subject of the present controversy, are the proceeds of the sale of certain ministerial lands in the town of Wareham; not directly, however, inasmuch as the funds, whilst held by the town, were vested in other securities; and it was only subsequently to the passing over of those securities, and by a new investment by the trustees of the parish, that the bank shares were purchased. This fact of the purchase of the shares by the trustees of the parish, and not of the town, might present an objection to a recovery against the present defendants; but in the view we have taken of the case, neither this objection, nor that taken to the election of the trustees of the town, or their capacity fully to enforce any claim of the town to these funds, has been deemed material. We think, upon the broader ground, the general question as to the corporate body which is to have the appointment of the trustees, and the control of the funds arising from the sale of the ministerial lands in Wareham, the case is clearly with the defendants. Originally, these lands vested in the town of Wareham, though appropriated " to the support of the regular administration of gospel ordinances." But they vested in the town in its parochial capacity. Every town was a corporation of that peculiar character, that it embraced, within the scope of its appropriate duties, those of a parish, until a separate parish was formed and organized within its limits. *Brunswick* v. *Dunning*, 7 Mass. 445. Under this authority, it was formerly the usage of the towns to transact their parochial business at the regularly called town meetings; making no difference, in this respect, whether acting on parochial subjects, or on matters of strictly municipal concern. *Austin* v. *Thomas*, 14 Mass. 338. The principle is now well settled, that where lands are holden by the town in its parochial capacity, the proceeds of the sale of such lands are also holden by the town in the like capacity; and upon the separate organization of a parish, the parish succeeds to all the parochial property of the town

This doctrine is fully stated and sustained in the cases of *Ludlow* v. *Sikes*, 19 Pick. 317 ; *Shrewsbury* v. *Smith*, 14 Pick. 297 ; and *Inhabitants of Milton* v. *First Congregational Parish in Milton*, 10 Pick. 447.

These authorities would entirely dispose of the question as to which corporation — that of the town or the parish — has the property and control of the proceeds of the lands holden by the town of Wareham in its parochial capacity, were it not for the further objection which is supposed to vary the case, and which arises from the provisions of the *St.* of 1825, *c.* 121.   The first section of that statute authorizes, in general terms, the town of Wareham to make sale of certain ministerial lands.   The second section authorizes the said town, at the annual meeting of its inhabitants, in March or April, to elect three or more persons, " who shall be the trustees of the funds to be raised by the sale aforesaid."   Does this statute perpetuate the legal estate and control of these funds in the town of Wareham, irrespective of any change that might take place by the organization of the parish distinct from that of the town ?   We think such was not its design ; nor does a proper construction of it necessarily lead to that result. This statute is to be construed with reference to those well known and established principles, already stated, that towns acted in the double capacity of municipal and parochial corporations, and that parochial property passes from the town to the parish, connected with the fact, that at the time of the enactment of this statute no separate organization of a parish had taken place.   The authority of the town to sell these lands, and invest the proceeds thereof, was only equivalent to an authority to the first parish in Wareham.   It was virtually an authority to act parochially in relation to these funds. The town of Wareham was to elect three or more trustees annually, to manage these funds, so long as they represented the parish ; but upon the separate organization of the first parish of Wareham, this duty would devolve upon the parish, as directly connected with the appropriation of these funds. We cannot suppose the legislature intended by this statute —

apparently a mere enabling statute, authorizing the change of certain parochial property from real estate to personal — to change also the whole legal character of these funds, and to enact that they should forever be legally vested in the town, in contradistinction to the first parish. It is much more reasonable, and much more in accordance with our whole system of the tenure of parochial property, to consider the provision, as to the annual election of trustees by the town, to have been exclusively applicable to the town, while continuing to act in a parochial capacity, and that, upon the organization of a separate parish, not only the income of the funds was to be appropriated, from time to time, by the parish, but also that the legal estate and entire control of the property passed to the parish.

The effect of this opinion is, therefore, that these funds, the subject of the present controversy, did, upon the separate organization of the first parish in Wareham, become the property of the parish, and were subject to its control; and that the trustees to manage the same are to be elected by the parish, and not by the town.

This view of the case settles the principal question between the parties before us.

We do not perceive that the result is at all affected by the two minor points raised on the argument. It will not avail the plaintiffs to establish, if they could do so, that the parish, after being duly organized in 1828, and continuing so until 1844, through some neglect, failed to elect their annual officers in the year 1844. Such omission does not necessarily operate as a dissolution of the parish. *Oakes* v. *Hill,* 14 Pick. 442. The property vested in the parish by their organization in 1828, and the town ceased to have any control over the same after that period.

The vote of the directors of the Wareham ⌐ · ⸯ, that " the bank would allow interest at the rate of six per cent. *per annum,* on the dividends due on these shares of the bank stock until the majority of the directors vote to the contrary, and notify the town trustees," does not vary the case.

There are various objections to the legal effect or binding force of this vote of the directors. 1. It appears to have been adopted at a meeting attended by less than a major part of the directors. 2. It is no direct promise to pay the principal sum sought to be recovered in this action, but only the interest on the dividend ; and to whom this is payable is equivocal ; all the stipulation, in reference to the " town trustees," being that the interest should be paid until the directors "notify the town trustees that they would no longer allow interest on said dividend.". 3. But the more weighty objection is, that it can have no effect, for want of any legal consideration. So far as it is a promise to the plaintiffs, it is upon the assumption that the shares belonged to the plaintiffs, and that, as such holders, they were entitled to any interest that might be allowed on dividends not called for. But it now appearing that the shares were in fact the property of the defendants, and they alone entitled to the dividends accruing thereon, there is no equitable or legal consideration for such promise to the plaintiffs. *Nonsuit confirmed.*